IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MARI WALKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
| **PIEDMONT URGENT CARE** | ) |
| **BY WELLSTREET, LLC** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Mari Walker ("Plaintiff" or "Ms. Walker") brings this action for relief and damages against Defendant Piedmont Urgent Care by WellStreet, LLC ("Piedmont Urgent Care" or "Defendant") based on the following allegations and causes of action:

## NATURE OF THE ACTION

1. This action to correct unlawful employment practices by Defendant Piedmont Urgent Care arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C.A. § 12101 *et seq.*

1

Plaintiff alleges that she engaged in protected activity under Title VII and the ADA by making internal complaints regarding discriminatory practices within her workplace and that she was subsequently terminated in retaliation for her complaints. Plaintiff seeks economic damages, including back pay, front pay, and lost benefits, as well as noneconomic compensatory damages and punitive damages, to the extent they are available under law. Plaintiff also petitions the court for her attorneys' fees and costs of litigation, as well as injunctive and declaratory relief as appropriate.

## THE PARTIES

2.      Ms. Walker, during the time of the events alleged in this complaint, was employed at Piedmont Urgent Care's Midtown location in Fulton County in Atlanta, Georgia.

3.      Piedmont Urgent Care is a limited liability company that is subject to liability under Title VII and the ADA, in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C.A. §§ 2000e(b) and 12111(5)(A).

## PERSONAL JURISDICTION

2

4. Piedmont Urgent Care may be served with proper process through its registered agent on record with the Georgia Secretary of State, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## SUBJECT-MATTER JURISDICTION AND VENUE

5. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

6. Venue is proper in this district under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district, and the events and omissions giving rise to the claim occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Ms. Walker filed a charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2021-06567 against Piedmont Urgent Care on December 12, 2021, alleging that she was retaliated against for opposing discriminatory harassment at her workplace.

8. Ms. Walker received a Right-to-Sue letter from the EEOC on May 18, 2022. A copy is attached as Exhibit A.

9. Ms. Walker timely files this action within 90 days of receiving her Right-to-Sue letter.

10. All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

11. From July 2020 to August 19, 2021, Ms. Walker was employed as a clinical service representative ("CSR") at Piedmont Urgent Care's location in the Midtown area of downtown Atlanta. She performed the duties of a medical assistant at the clinic, assisting doctors and physician's assistants with routine procedures, and helping prepare patients for examination and treatment.

12. In July 2021, a new CSR joined Walker's team, Ashley LNU (last name unknown). From the onset of her employment, Ashley LNU behaved in a dismissive and hostile manner toward two other staffers at the clinic, a CSR who was hearing impaired and a male lab technician who was openly gay.

13. For example, Ashley LNU regularly berated the gay employee with derogatory references to his sexuality, urging him to act in a more masculine manner and referring to him in front of coworkers as "his gay a**."

14. With respect to the hearing-impaired employee, Ashley LNU began to constantly ridicule her for her manner of speech and questioned why Piedmont Urgent Care would hire someone with obvious hearing deficiencies.

15. On or about August 1, 2021, Ms. Walker made an internal complaint to the acting practice manager at the clinic, Anna Burnett, that the hearing-impaired and gay employee were being subjected to bullying and hostile treatment and that Ashley LNU's conduct was creating an abusive and toxic environment.

16. Burnett informed Ms. Walker that she would investigate her complaints. The employee handbook at Piedmont Urgent Care outlines a specific protocol for following up on complaints of a hostile or intimidating environment, including an interview of the subject of the complaint and reporting to any supervisory personnel.

17. Within days of the complaint, Ashley LNU's conduct toward Ms. Walker became belittling and aggressive. Ashley LNU at one point told Ms. Walker, in a seeming reference to the complaints, that "no one was going to control" what she said or did. Ashley LNU started to mock Ms. Walker, comparing her to some figure in popular culture and derisively referring to her by that name.

18. When Ashley LNU became increasingly obnoxious, Ms. Walker made multiple other attempts to seek assistance from supervisory level staff at Piedmont Urgent Care, reaching out to the senior nurse practitioner at the clinic, Zaccardo Clark, and at one point requesting a reassignment to another Piedmont clinic. Ms.

Walker directly referenced Ashley LNU's verbally abusive behavior toward a gay and a disabled employee.

19. Ms. Walker's appeals for help were unsuccessful. Clark took no steps to get involved and made it clear he did not view the matter as serious. Ms. Walker was told that the staffing shortages at the Midtown clinic made a transfer impractical.

20. Ms. Walker also noticed that her direct supervisor and the team lead for CSRs, Gloria Hardiman, had a relationship with Ashley LNU outside of work; the two of them discussed socializing together on weekends and after hours.

21. On one occasion in mid-August, 2021, Ms. Walker admonished Ashley LNU for loudly making a derogatory reference to the gay technican. Ashley LNU became enraged at Ms. Walker, telling her that she was "stupid," and taking a swing at her at one point during the argument. The situation deteriorated to the point that Ashley LNU exploded at Ms. Walker, telling her, "B****, I will kill you."

22. The entire confrontation was captured on video and within days, Burnett terminated Ashley LNU. Ms. Walker was initially assured by Burnett that the video made it clear Ms. Walker had not acted wrongfully and that Ashley LNU

6

was the clear aggressor. Burnett specifically promised Ms. Walker that her job was in no danger.

23. Within a week, Ms. Walker was abruptly informed by Burnett and an off-site human resources officer that Piedmont Urgent Care had re-evaluated her status and had decided to terminate her after all.

24. Within a short time, Ms. Walker was told by staffers at the clinic that they had overhead Clark and Hardiman discussing their plans to intercede with Burnett in order to get Ms. Walker fired because of her role in Ashley LNU's termination.

25. Prior to Ms. Walker's sudden termination, she had never been subjected to corrective or disciplinary action. As Burnett had observed less than a week earlier, the on-site video absolved her of any blame for the altercation with Ashley LNU. Nonetheless, Ms. Walker was terminated because two other employees at the clinic advocated for her dismissal as a reprisal for Ms. Walker's complaints about discriminatory and harassing behavior by a coworker.

## COUNT I
**(Retaliatory harassment, in violation of 42 U.S.C.A. § 2000e-3(a) and 42 U.S.C.A. § 12203(a))**

26. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

27. Plaintiff engaged in activity protected under Title VII and the ADA by making an internal complaint opposing discriminatory actions by a coworker based on sexual orientation and disability.

28. Plaintiff reaaonably believed that Defendant was engaging in discriminatory practices by permitting and failing to promptly remedy a work environment that was abusive and hostile towards openly gay employees and an individual with a disability.

29. Plaintiff was subjected to mistreatment and abusive conditions based on her protected activity, in that she faced threatening and verbally abusive conduct by the subject of her complaints.

30. The retaliatory harassment Plaintiff encountered well might have dissuaded a reasonable person from making or supporting a charge of discrimination under Title VII or the ADA.

31. As a result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II

**(Retaliatory termination in violation of 42 U.S.C.A. § 2000e-3(a) and 42 U.S.C.A. § 12203(a))**

32. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

33. Plaintiff engaged in activity protected under Title VII and the ADA by making an internal complaint opposing discriminatory actions by a coworker based on sexual orientation and disability.

34. Plaintiff was terminated based on the conduct of supervisory level employees, who manipulated decisionmakers into terminating Plaintiff in retaliation for internal complaints of discrmination. The retaliatory motives of said employees may be imputed to Defendant, in that they performed actions motivated by retaliatory animus, and their actions were a proximate cause of Plaintiff's subsequent termination.

35. As a result of Defendant's termination based on retaliatory motives, Plaintiff has suffered both monetary damages, including but not limited to back pay, front pay, and the loss of benefits, and noneconomic damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## **PRAYER FOR RELIEF**

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits;

    B. Compensatory damages to the extent allowed by law;

    C. Punitive damages, to the extent allowed by law;

    D. Attorneys' fees and costs of litigation;

    E. Pre-judgment and post-judgment interest at the highest lawful rate; and

    F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted, the 9th day of August, 2022.

**HKM Employment Attorneys LLP**

Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

s/Jermaine "Jay" Walker
Jermaine "Jay" Walker
GA Bar No. 142044
3355 Lenox Rd. NE, Suite 705
Atlanta, GA 30326
jwalker@hkm.com
Direct: 404-301-4020
Attorneys for Plaintiff

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

10