IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARI WALKER,<br>   Plaintiff,<br><br>              v.<br><br>PIEDMONT URGENT CARE BY<br>WELLSTREET, LLC,<br>   Defendant. | Civil Action No.<br>1:22-cv-03145-SDG |

**OPINION AND ORDER**

This matter is before the Court on the Final Report and Recommendation (R&R) [ECF 58] entered by United States Magistrate Court Judge John K. Larkins III, recommending that Defendant Piedmont Urgent Care by WellStreet's (WellStreet) motion for summary judgment [ECF 39] be granted. For the following reasons, the R&R is **ADOPTED IN PART** and **DECLINED IN PART**. WellStreet's motion for summary judgment is **GRANTED** as to Walker's retaliatory harassment claims and **DENIED** as to her retaliatory termination claims.

**I.    BACKGROUND**

This is an employment suit against WellStreet brought by its former employee, Plaintiff Mari Walker, who reported a co-worker's discriminatory comments and was fired a week later. Walker alleges that the co-worker, Ashley Hampton, repeatedly made disparaging remarks about two other WellStreet

employees, one of whom is hearing-impaired[1] and the other who is gay,[2] often in their presence.[3] Walker reported Hampton's comments to her (Walker's own[4]) supervisor on August 12, 2021, sometime mid-morning.[5] Later that afternoon, Walker and Hampton had an aggravated confrontation—a non-physical fight—inside WellStreet's facility.[6] A week later, on August 19, Walker was fired[7] (Hampton had also been fired, two days earlier on August 17[8]). Walker then sued, alleging that WellStreet illegally retaliated against her for reporting Hampton's discriminatory comments.[9]

Walker's complaint asserted claims for retaliatory harassment and retaliatory termination under both Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA).[10] Walker has since abandoned her

---

[1]  ECF 47-3, at 1–2 ¶¶ 1–3.

[2]  *Id.* at 2 ¶¶ 4–5.

[3]  *Id.* ¶ 6.

[4]  ECF 42, at 95.

[5]  ECF 47-2, at 12 ¶ 36.

[6]  *Id.* at 17–26 ¶¶ 56–81.

[7]  *Id.* at 34 ¶ 109.

[8]  ECF 56-5, at 99.

[9]  ECF 1.

[10]  *Id.* at 7–8.

harassment claims,[11] but maintains that her termination was retaliatory and in violation of both Title VII and the ADA.[12] WellStreet has responded that Walker was fired, not because she reported Hampton, but because her fight with Hampton violated the company's workplace conduct policy.[13] Judge Larkins, agreeing with WellStreet, entered his R&R recommending that WellStreet be granted summary judgment on all of Walker's claims.[14] Walker has timely filed objections.[15]

## II.   STANDARD OF REVIEW

In reviewing an R&R to which objections have been filed, a district court must review the objected-to parts of the R&R *de novo*, 28 U.S.C. § 636(b)(1), provided the objecting party "clearly advise[s] the district court and pinpoint[s] the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). Where the objections are "not specific enough or clear enough to permit the district court to effectively review the magistrate judge's ruling," *Schultz*, 556 at 1360, the district court must ensure only that the R&R is not "clearly erroneous or … contrary to law," Fed. R. Civ. P. 72(b). A district

---

[11]   ECF 47-1, at 2. Undersigned thus adopts the R&R's grant of summary judgment on Walker's retaliatory harassment claims.

[12]   *See generally* ECF 47-1.

[13]   *See generally* ECF 39-1.

[14]   ECF 58.

[15]   ECF 60.

3

court may, in its discretion, consider or decline to consider arguments that were never presented to the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1290–92 (11th Cir. 2009). It may otherwise "accept, reject, or modify, in whole or in part," the R&R's factual determinations and legal recommendations under its broad discretion. 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

The parties dispute whether the R&R properly concluded that WellStreet is entitled to summary judgment under Fed. R. Civ. P. 56 on all of Walker's claims. Summary judgment is appropriate when "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). A fact is "material" if it could change the outcome of the case, and a dispute is "genuine" if a reasonable jury could resolve it in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The purpose of summary judgment is to test "the need for a trial"—to look for "factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. Thus, at summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Judges are not to weigh evidence, determine credibility, or draw their own inferences from the facts, these being the proper functions of the jury. *Id.*

The R&R recommended that WellStreet be granted summary judgment on both of Walker's retaliation claims, after determining that Walker could not prove she was fired because she reported Hampton's comments, either under the *McDonnell Douglas* burden-shifting framework[16] or through a so-called "convincing mosaic" of circumstantial evidence.[17] Walker objected to the R&R, arguing that the record contains enough evidence—between WellStreet's dishonesty regarding Walker's termination,[18] and additional circumstantial evidence of retaliatory animus[19]—to create a genuine dispute of fact as to WellStreet's intent in firing Walker. Undersigned agrees with Walker.

To get past summary judgment on either of her retaliation claims, Walker must demonstrate that "her protected activity was a but-for cause of the alleged adverse action by the employer"—that is, she must prove that she would not have been fired *but for* her reporting of Hampton's discriminatory comments. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc). One way that Walker can show but-for causation is through the three-step *McDonnell Douglas* burden-shifting framework. *See generally McDonnell Douglas Corp. v. Green*,

---

[16] ECF 58, at 26.

[17] *Id.* at 30.

[18] ECF 60, at 8.

[19] *Id.* at 14.

411 U.S. 792 (1973). Under *McDonnell Douglas*, the employee first has the burden of establishing a prima facie case of retaliation "by proving that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023). Second, the burden shifts to the employer to articulate a "legitimate, nonretaliatory reason for the adverse action." *Id.* Third, the burden shifts back to the employee to show that "the employer's proffered reason was a pretext for retaliation." *Id.*

However, as *Berry* noted, *McDonnell Douglas* is "not the only way to prove retaliation; instead, it is *one* way to prove retaliation with circumstantial evidence." *Id.* at 1310. An employee may demonstrate the existence of a triable issue of fact without relying on *McDonnell Douglas*, by offering what the Eleventh Circuit has called a "convincing mosaic" of circumstantial evidence giving rise to an inference of retaliatory intent. *Id.* at 1311; *see also Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Regardless of how the parties characterize the analysis—as under *McDonnell Douglas*, as through the "convincing-mosaic framework," or by some other name—the dispositive question at summary judgment remains the same: "whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." *Berry*, 84 F.4th at 1311.

*McDonnell Douglas* approaches this dispositive question—what is often called the issue of "causation" or "retaliatory intent"—through the vehicle of "pretext." To show that an employer's reason for its actions is pretextual, the plaintiff "must prove that the employer's reason was false and that retaliation was the real reason"—in other words, pretext entails retaliation. *Berry*, 84 F.4th at 1308. The Eleventh Circuit has explained that the plaintiff's burden to show pretext "merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional [retaliation]"—in other words, retaliation entails pretext. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023). Thus, under *McDonnell Douglas*, to show pretext is to show retaliation, and vice versa. This is consistent with the Eleventh Circuit's teaching that *McDonnell Douglas* is only an "evidentiary tool" and not "an independent standard of liability." *Id.* at 944. If *McDonnell Douglas* does not impose substantive requirements independent of Title VII, then the dispositive inquiry under the former must be legally equivalent to the dispositive inquiry under the latter. At summary judgment in a Title VII retaliation case, regardless of whether the case is travelling under *McDonnell Douglas*, the issue is always whether "the record taken as a whole," seen "in the light most favorable" to the plaintiff, gives rise to a reasonable inference that the defendant retaliated against the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986); *see also Gogel*, 967 F.3d at 1134 ("[T]he summary judgment rule applies in job discrimination cases just as in other cases.").

The R&R, analyzing causation under *McDonnell Douglas*, determined that WellStreet was entitled to summary judgment because it had articulated a "legitimate, non-discriminatory reason" for Walker's termination[20]—the fight—and Walker had failed "to create a genuine dispute of material fact" on the issue of pretext.[21] But in so concluding, the R&R looked at only a subset of the evidence: one phone call between Walker and her supervisor Anna Burnett, one email between Burnett and WellStreet's compliance officer Ty Houston, and WellStreet's internal investigation into the fight.[22] Notably, the R&R did not consider Walker's evidence of temporal proximity, arguably the strongest evidence of WellStreet's retaliatory intent. Nor did the R&R consider the record "as a whole": it weighed the three pieces of evidence individually—first the phone call, then the email, then the investigation—and ruled that each, by itself, could not give rise to a reasonable inference that WellStreet's stated reason for firing Walker was pretextual. The R&R's narrow pretext analysis, which did not explicitly "consider all relevant evidence in the record to decide the ultimate question" of intentional retaliation,

---

[20]  ECF 58, at 23.

[21]  *Id.*

[22]  *Id.* at 23–24.

*Tynes*, 88 F.4th at 947, cannot support the broad conclusion that WellStreet is entitled to summary judgment.

This is especially true where the R&R elsewhere concluded, under a more wholistic view of the evidence, that a genuine dispute of fact existed as to the issue of pretext. In analyzing Walker's prima facie case, the R&R looked at the following evidence:

1. The short amount of time—seven days—between Walker's reporting of discrimination on August 12 and her termination on August 19;[23]

2. The fact that WellStreet espouses a "progressive discipline policy," under which "fighting or threatening violence in the workplace" is theoretically punishable by a warning or a performance improvement plan instead of immediate termination, "depending on the severity of the problem and the number of occurrences";[24] and

3. Walker's testimony that Burnett called her on August 17 and told Walker that she (Burnett), senior operations director Jonathan Stokes, and medical director Cassandra Donnelly had reviewed video footage of the fight, that they had fired Hampton because she had been the aggressor, and that Walker's job was "safe."[25]

Based on this evidence, the R&R reached two conclusions. First, it concluded that "there is a dispute of fact as to whether the altercation was egregious enough to

---

[23] *See id.* at 21 n.11.

[24] *Id.* at 21; ECF 56-5, at 64–65.

[25] ECF 58, at 21; ECF 56-1, at 43.

automatically have resulted in Plaintiff's discharge"[26]—in other words, that a dispute of fact existed as to whether WellStreet's stated reason for Walker's termination was false. Second, the R&R concluded that Walker's fight did not necessarily sever the causal connection between Walker's protected conduct and her termination[27]—in other words, that a dispute of fact existed as to whether the real reason Walker was fired was retaliation. And if there are disputes of fact as to whether (1) the employer's reason is false and (2) the real reason is retaliation, then there is a dispute of fact as to pretext. *Gogel*, 967 F.3d at 1136.

The Court adopts this fact analysis in the R&R because it agrees that Walker has shown a dispute of fact as to pretext. More specifically, there is a genuine dispute over the extent to which Burnett and other WellStreet managers had reviewed video footage of the fight when they decided to fire Hampton and Walker. The record contains an email from Stokes, sent at 4:17 pm on August 17, indicating that HR would be "separating" Hampton and "meeting with" Walker. The email can be read as indicating that HR would be separating *only* Hampton and meeting with Walker *in lieu of separation*—a reading that is consistent with Walker's testimony that Burnett told Walker the same thing at around the same

---

[26] ECF 58, at 21.

[27] *Id.*

time.[28] And the parties agree that by 4:17 pm on August 17, Burnett had distributed video footage of the fight to Stokes.[29] Thus, the record indicates that there was a time at which (1) Burnett and Stokes had reviewed video footage of the fight, and (2) Burnett and Stokes had decided to fire Hampton but not Walker. This, combined with WellStreet's assertion that Walker was fired through Burnett's delegated exercise of Stokes's authority,[30] supports the reasonable inference that something other than Walker's conduct during the fight ultimately caused her termination. And Walker's alternative narrative—that she was fired because she engaged in protected activity seven days earlier—cannot be ruled out as a matter of law.

> The application of *McDonnell Douglas* to this case, then, is as follows:
>
> 1. Walker established her prima facie case with evidence that she was fired a week after reporting discriminatory comments, *see Berry*, 84 F.4th at 1309 ("[V]ery close temporal proximity between a protected activity and an adverse action can create an inference of causation.");
>
> 2. WellStreet rebutted Walker's prima facie case with evidence that it fired Walker a week after she violated its workplace conduct policy; and
>
> 3. Walker showed a dispute of fact as to pretext by combining evidence of temporal proximity tending to prove causation, *see Berry*, 84 F.4th at 1309 ("[E]vidence of causation can be used to

---

[28] ECF 56-1, at 43.

[29] ECF 39-2, at 17 ¶ 96.

[30] *Id.* at 18 ¶ 101.

>prove pretext."), with evidence that her conduct during her fight with Hampton was an insufficient explanation for her immediate dismissal.

And a dispute of fact as to pretext means a trial. *Berry*, 84 F.4th at 1308. Because undersigned agrees with the R&R that the fight did not necessarily sever the causal connection between Walker's protected conduct and her termination, the Court must decline to adopt the R&R's conclusion that WellStreet is entitled to summary judgment on Walker's retaliatory termination claims.[31]

Moreover, this case has a factual quirk that makes it particularly ill-suited for summary judgment: the causal connection, not only between Walker's reporting of Hampton's comments and Walker's termination, but between Walker's reporting of Hampton's comments and the Walker-Hampton fight. In the typical employment case, the employer's explanation is causally unrelated to the plaintiff's protected conduct (or, in discrimination cases, to the plaintiff's protected category). Thus, an employer might explain that the plaintiff was fired because she stole from the company, or because she was bad at her job; the plaintiff would then hardly respond that she stole from the company *because* of her race, or that she was bad at her job *because* she reported sexual harassment. This case is different. The

---

[31] Because the Court rules that a genuine dispute of material fact exists as to Walker's retaliation claims under *McDonnell Douglas*, it does not reach Walker's convincing mosaic argument, and consequently declines to adopt the R&R's convincing mosaic analysis.

record strongly suggests that Hampton incited a fight with Walker *because* Walker had reported Hampton earlier that day. Thus, even if Walker's firing could be *wholly* explained by her fight with Hampton, a jury could still find that Walker's reporting was a but-for cause of her termination: if Walker hadn't reported, she wouldn't have gotten in a fight, and she wouldn't have been terminated. The Court cannot grant summary judgment in favor of WellStreet when a reasonable jury could easily infer that Walker would *not* have been fired *but for* her reporting of Hampton's conduct—the very thing Walker needs to prove to recover under Title VII. The interwoven causal strands connecting Walker's protected activity, her fight, and her termination must be untangled by the jury at trial.

### IV.   CONCLUSION

The R&R [ECF 58] is **ADOPTED IN PART** and **DECLINED IN PART**. WellStreet's motion for summary judgment [ECF 39] is **GRANTED** as to Walker's retaliatory harassment claims but **DENIED** as to her retaliatory termination claims. The parties are **ORDERED** to file a joint Proposed Pretrial Order within 30 days.

**SO ORDERED** this 31st day of March, 2024.

_____
Steven D. Grimberg
United States District Judge